# In re Change of Grade of Ridge Avenue.

1. The provisions of the General Road Law of June 13th 1836, Pamph. L. 556, requiring an owner of land through which a public road may be opened, to present his petition for a jury of view to assess damages within one year after his land has been taken, applies in cases where the grade of a street in the city of Philadelphia, more than fifty feet wide, is altered in accordance with the provisions of section 27 of the Consolidation Act of February 2d 1854, Pamph. L. 37.

2. The provisions of section 27 of the Consolidation Act of February 2d 1854, Pamph. L. 37, authorizing the recovery of damages by land owners in the city of Philadelphia whose land is injured by the alteration of the grade of streets in the manner therein specified, were intended to apply in those cases only where such alteration is made in order to make all the streets conform to a general plan, changing the grade previously adopted by the old city of Philadelphia, or by one of the municipalities incorporated therewith.

3. The Ridge Turnpike Company was incorporated by Act of Assembly of March 30th 1811, Pamph. L. 167, with power to construct a turnpike through and beyond a portion of the former district of Penn (now a part of the city of Philadelphia), in accordance with certain grades therein specified. The turnpike was laid out accordingly, and prior to 1854 the grade thereof was neither changed nor regulated by the authorities of the district of Penn. In 1871 city councils ordered a change of grade, which was physically effected in 1873. In 1878 certain property owners filed a petition for a jury of view, to assess the damages which they had suffered by said change of grade. *Held,* that the petitioners, having failed to comply with the provisions of the general road law of June 13th 1836, section 7, Pamph. L. 556, requiring petitions in such cases to be filed within one year, were not entitled to a jury of view. *Held,* further, that the provisions of the Consolidation Act of February 2d 1854, section 27, Pamph. L. 37, under which said petition was filed, had no application to the facts of the case.

January 26th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Certiorari to the Court of Quarter Sessions of *Philadelphia county :* Of July Term 1881, No. 115.

The record showed the following facts :—On November 21st 1878, Thomas Byrnes and others filed their petition in the said Court of Quarter Sessions, setting forth that they owned certain lands fronting on Ridge avenue, between Abbotsford avenue and Falls lane, in the 28th ward of the city of Philadelphia ; that by resolutions of councils, of October 1st 1870, and June 24th 1871, the city of Philadelphia directed a " revision " of the grades of Ridge avenue or Turnpike road, which was done by a plan subsequently confirmed in accordance with law ; that the petitioners are damaged by the said change of grade ; and praying for a jury of view to assess their damages. A supplemental petition further set forth that the Ridge Turnpike Company had power under their charter to fix the grade of their turnpike road, and had fixed a grade, and built the road in conformity therewith ; and that the city did alter and change said grade, to conform to the grades on the city plan, to the damage of the petitioners.

A jury of view was appointed, who filed their first report January 28th 1880, reporting as follows :—" According to said plan, a few properties fronting on the said Ridge avenue are somewhat damaged, but we the jury hesitate to report specifically the amount of those damages, because there has been no evidence adduced before us of the establishment of a grade of the old Ridge avenue turnpike, within the limits of the said points prior to the summer of 1873, when the improvements of Ridge avenue were made. The alleged change of grade, in our opinion, consists of a change from the grade of the old road-bed of the turnpike to that now established. There has been, therefore, in our opinion, no change of an established grade. And we, therefore, report that there has been no damage, for which the city of Philadelphia is responsible, to any of the property owners fronting on the said Ridge avenue, between the said Abbottsford avenue and School lane."

Exceptions filed by the petitioners to the report were sustained by the court, and the report was referred back to the jury " to report specifically the damages done to the several properties fronting on Ridge avenue, by the change of grade from the grade of the old bed of the turnpike to that now established."

The supplemental report of the jury filed March 2nd 1881, set forth that, in pursuance of said order of court, they found that certain properties, therein specified, were damaged to the amount of $6,000.

[In re Ridge Avenue.]

The city of Philadelphia filed, inter alia, the following exception to this supplemental report:—" 29. Because the proceeding is without authority of law, inasmuch as there has been no such change of grade or grade regulation as entitles the petitioners or claimants to recover damages against the city of Philadelphia in this proceeding in the Court of Quarter Sessions."

By writing filed, it was admitted that the physical change of grade was actually made or accomplished on the 1st day of July, 1873.

When the case was called for argument on the exceptions, on July 6th 1881, counsel for the city moved to quash the petition, and set aside and dismiss all the proceedings, " it appearing by the record that the court is without jurisdiction, the petition not having been filed within one year either from the confirmation of the plan, or the physical change of grade." This motion was refused.

After argument on the exceptions, the court dismissed the same and confirmed the supplemental report of the jury. No opinion was filed. The city of Philadelphia thereupon took this writ of certiorari, assigning for error, inter alia, the sustaining of the petitioners' exceptions to the first report of the jury; the refusal of the motion to quash the petition; and the dismissing of the city's 29th exception to the supplemental report.

*William H. Addicks*, assistant city solicitor (with him *Charles E. Morgan, Jr.*, assistant city solicitor, and *Wm. Nelson West*, city solicitor), for the city of Philadelphia.—The petitioners claim to recover damages under the following clause of the 27th section of the Consolidation Act, of February 2d 1854, viz. :—" And provided further, that in any alteration that may be made of the regulation of any portion of the city, in conformity with the provisions of this section, whereby damages may ensue to private property, compensation shall be made for such damages, to be ascertained and paid by law as in case of damages for opening streets."

The " regulation" referred to in this clause is a city grade regulation, fixed, confirmed and recorded according to law: In re Change of Grade Germantown Avenue, Leg. Intell. (1880) 39. There was no such grade regulation of the old turnpike road. The artificial surface of that road was accidental and variable, according to the pleasure of the corporation, within the charter limit of four degrees from the horizontal line. It was not in accordance with any regulation for city streets. Its height and gradients were not a matter of public record. The road was similar to other turnpike and country roads, existing before consolidation in the districts and townships within the

[In re Ridge Avenue.]

county of Philadelphia, each having a different system. The purchase by the city of a turnpike franchise, does not constitute the establishment of a city grade, which can only be adopted in conformity with the process prescribed in the 27th section of the Act of 1854 : In re Germantown Avenue, supra. The alleged change of grade was not a change, but a first establishment of grade. The case does not, therefore, come within the remedy for a change of grade provided by the act in question.

But if this were otherwise, the petitioners are barred by lapse of time. The act of 1854 provides that "compensation shall be made for such damages, to be ascertained and paid by law as in case of damages for opening streets." The latter proceeding is under the Act of June 13th 1836 (P. L. 556), the limitation clause of which, in the 7th section, provides that the owner of land, through which a public road is opened, "may within one year from the opening of the same, apply by petition to the Court of Quarter Sessions," &c. This section applies to Philadelphia, so far as the *right* to damages is concerned. The practice only is modified by the 75th and following sections: Smedley *v.* Irwin, 1 P. F. Smith 449 ; In re Twenty-eighth Street, Leg. Int. 1881, 52. The jurisdiction of the Quarter Sessions in road cases being purely statutory, all the provisions of the statute must be complied with in order to give jurisdiction: Kroemer *v.* Commonwealth, 3 Binney 583 ; Church Road, 5 W. & S. 201 ; Liberty Alley, 8 Barr 382 ; In re Chestnut street, 5 W. N. C. 237. It has been frequently decided that the petition must be filed within one year from the time of the injury, and that a road jury cannot give damages for any injury done more than one year before the filing of the petition : in re State street, 1 Pearson 158 ; Lewistown Road, 8 Barr 109 ; Jarden *v.* Railroad Co., 3 Whart. 510 ; Commonwealth *v.* McAllister, 2 Watts 190. The petition in this case not having been filed within one year from the injury complained of, the court had no jurisdiction, and our motion to quash should have been granted. The question of jurisdiction may be raised at any stage of the proceeding.

*E. M. Hunt* (with him *Vanderslice, Stiltz, Dever, Haugh, McIntyre* and *McKinlay*), for the defendants in error.—Prior to consolidation, the turnpike roads connecting boroughs, districts, &c., were the most important roads in the county. Their charters prescribed their width, direction and grade, which the public in building were entitled to rely upon ; and the city, when it took such roads by its right of eminent domain, was bound by the grades as then established. When, subsequently, the city directed a "revision" of the grade of this turnpike, it was an admission that a legal grade already existed. Such

[In re Ridge Avenue.]

grade was recognized by the act of March 11th 1850, P. L. 165. In Ridge Avenue Railway Co. v. The City, 10 Phila. Rep. 37, the city, in opposing an application for an injunction to restrain it from changing the grade of Ridge avenue, defended on the ground that the complainants had an adequate remedy at law under this 27th section of the act of 1854, and the Court so held. The "revision" having been made for the sake of uniformity and the public good, individuals injured thereby should be compensated in damages, as provided by the act.

The general road law of 1836, with its limitation of one year, does not apply to this case. By its terms, in several sections, it limits itself to roads laid out (not opened) according to its provisions: one of which was, that such road must be laid out by a jury of view and returned on a draft to the Quarter Sessions: but Ridge avenue was not so laid out: another was, that such road should not exceed fifty feet in width; Ridge avenue is eighty feet. The Act applied only to country roads, where there was no special system of road laws; it expressly excepted incorporated boroughs, and roads laid out under local and special Acts. Ridge avenue was laid out by a special Act, and this part of it was in the incorporated township of Penn, which had its own system of road laws, viz.: the same as the district of Spring Garden had under its old charter of 1832, P. L. 427. Therefore, this part of the present city never having been subject to the road law of 1836, and this street not being within the terms of the Act, the limitation therein does not apply. In 1873, when this change was made, "damages for opening streets" were "ascertained" and are now ascertained under the provision Acts of April 21st 1855, Purd. Dig. 1287, pl. 124; May 13th 1856, Ibid. 1289, 1288, pl. 129–8; April 21st 1858, Ibid. 1289, pl. 130; April 1st 1864, Ibid. 1289, 1290, pl. 133–4–5.

Besides, the motion to quash was too late. The time for exceptions had long expired, and the Act of May 3d 1869, Purd. Dig. 1287, pl. 122, provides: " no report shall be set aside unless in pursuance of some exception filed to the said report." It is error to set aside a report on any ground not appearing in an exception duly filed: In re Spring Garden Street, 11 P. F. Smith 422.

Mr. Justice PAXSON delivered the opinion of the court, February 20th 1882.

Before the exceptions were argued in the court below, the city moved to quash the proceedings for want of jurisdiction, the petition not having been filed within one year, either from the confirmation of the plan or the physical change of grade. This motion was denied, and forms the subject of the fifth assignment of error.

[In re Ridge Avenue.]

The seventh section of the general road law of June 13th 1836, P. L. 556, provides that "the owner of any land through which a public road shall be opened as aforesaid, may, within one year from the opening of the same, apply by petition, to the Court of Quarter Sessions of the proper county, setting forth the injury which he or she may have sustained thereby,· and thereupon, the said court shall appoint six disinterested persons to view the premises and assess the damages, if any, which such petitioner may have sustained."

It was distinctly ruled in Lewistown Road, 8 Barr 109, following the principle in Commonwealth *v.* NcAllister, 2 Watts 190, that "each lot-holder through whose lot the new street passed, must present his petition for damages within one year from the time his lot was thrown open; that the year mentioned in the Act commenced at the time each lot was thrown open, and not from the time when the whole street was finished and effectually opened for public use."

From this it seems clear, that petitions for the assessment of road damages, under the Act of 1836, must be presented within one year from the time the land is taken for such purpose, and not afterwards. The section referred to is an Act of limitation.

. This brings us to the important question, does the case in hand come within the Act? It was not a proceeding to open a street. On the contrary, it was a petition, on the part of certain property owners on Ridge avenue, for a jury to assess the damages sustained by them, by reason of a change of grade. By resolutions of councils approved October 1st 1870, and June 24th 1871, the Board of Surveyors were authorized to revise the lines and grades of the locality within which this portion of the Ridge Turnpike road (now Ridge avenue) was situated, and, pursuant to such authority, the lines and grade regulations for Ridge avenue were fixed and determined by the confirmation of Plan No. 163, on file in the Survey Department of the city of Philadelphia. Subsequently, in 1873, the city changed the roadway from an ordinary rural turnpike to a paved avenue or street, with cartway, gutters, curbing, and sidewalks, constructed in conformity to the grade regulations laid down upon plan No. 163. It appears from the record that the physical change of grade referred to, was actually made in the summer of 1873, and that the property owners, claiming damages for the injury resulting from said change, did not file their petition, or commence any proceeding, until the 21st of November 1878.

It was not alleged that there has been a change of any grade fixed by the Board of Surveyors or any municipal authority. It was conceded the only change was from the bed or grade of the old turnpike road to that established by Plan No. 163.

[In re Ridge Avenue.]

Just here it is proper to say that section 8 of article XVI. of the constitution, has no application, for the reason that the grade was changed, and the rights and duties of the parties fixed prior to the adoption of that instrument. This is manifest, and was conceded upon the argument. The petitioners rest their case upon the 27th section of the Act of February 2d 1854, P. L. 37, known as the Consolidation Act, which, after providing for the appointment and organization of a Board of Surveys, for the purpose of the planning of the city, the building of bridges, the construction of sewers, and grading of highways, as councils may declare by ordinance, and settling disputes as to party lines, walls, &c., continues as follows: "Provided, that nothing herein contained, shall alter or interfere with any survey or regulation, made or directed to be made under the several laws of this commonwealth, of any portion of the county of Philadelphia, but the same shall be completed, or if already confirmed, shall remain unalterable, as therein provided, unless said alteration shall be ordered, by a resolution of councils, . . . . . upon public notice, previously given for the space of thirty days, in at least two of the daily newspapers of the said city, until otherwise provided for by ordinance. And provided further, that in any alteration that may be made of the regulation of any portion of the city, in conformity with the provisions of this section, whereby damages may ensue to private property, compensation shall be made for such damages, to be ascertained and paid by law as in case of damages for opening streets."

Assuming the petitioners to come within the above Act, and that they are entitled to damages for the change of grade, it is clear such damages must be "ascertained and paid by law as in case of damages for opening streets." It is equally clear, that if the general road law of 1836 applies, the case is within the limitation of said act. as the petition for a jury to assess the damages was not presented until more than five years subsequent to the physical change of grade.

It was urged on behalf of the petitioners that the Act of 1836 does not apply, for various reasons, among which may be mentioned, 1. That the Act provides for the laying out, and not the opening of streets; that it was intended for country roads only, and not for the streets of a city or borough. 2. That the Act limits itself to roads fifty feet wide or less, whereas Ridge avenue is of the width of eighty feet. 3. That damages for opening streets in Philadelphia are now ascertained under subsequent Acts of Assembly.

In considering these various propositions, we must not lose sight of the distinction between the laying out of streets and the assessing of damages for opening of streets: In re Milford,

[In re Ridge Avenue.]

4 Barr 303, cited by petitioners, the proceeding was to view and lay out streets in an incorporated borough, which had already been laid out by competent authority or dedicated to public use by the original proprietor. In the opinion of the court it was said : " The road before us, as it is called, consists of many parallel roads, and many more cross ones surrounding entire squares, and having many endings and beginnings. It is in fact, a dislocated fragment of the plan of an incorporated borough, which is the seat of justice of a county. And why should the road law be applied to streets and alleys which are already laid out by competent authority, and which. can gain no additional sanction from it ? The authority of the owner of a town plot, to dedicate his ground to public use, is as effective as that of the legislature." The Act of 1836 not only applies to the laying out of roads, but it also expressly provides for assessing the damages to property owners for opening. Smedley *v.* Erwin, 1 P. F. S. 445, is an authority directly in point, that the Act of 1836 applies to the city of Philadelphia so far as the assessment of damages is concerned. Nor is there any force in the suggestion that the Act applies only to roads of fifty feet in width. It is true, the fifth section of the Act declares that " the breadth of a public road laid out as aforesaid, shall not exceed fifty feet," but this has no relation to the question of damages, and does not affect the limitation as to time contained in the seventh section.

It was said by Mr. Justice Strong, in Smedley *v.* Erwin, supra: " The 7th, 8th and 9th sections are operative in this city as fully as elsewhere, saving only the particulars in which alterations were made by the 76th, and four next following sections. Those alterations relate exclusively to the time of presentation of petitions for assessments, to the mode of selecting the jurors for views, and to their qualifications. In all other respects there is no difference. No other difference was intended. The 1st section of the Act enacts that the Court of Quarter Sessions of every county of the commonwealth shall appoint viewers, to view the ground proposed for a road, and make report of their proceedings to the respective court at the next term thereof, with a proviso that the provisions of the Act relative to the appointment of viewers to lay out roads and to assess damages shall not extend to the city and county of Philadelphia, thereinafter specially provided for. It is not the provision relative to the assessment of damages, but the provisions respecting the appointment of viewers, that are declared not to extend to the city and county of Philadelphia. If the 7th, 8th and 9th sections are not in force in Philadelphia, so far as they relate to the lands taken for public use, then the Act makes no provision for any assessment at all in the city." There is nothing in subsequent legislation which even by implication

takes away the limitation contained in the Act of 1836. While the Acts of 21st April 1855, P. L. 266; 13th of May 1856, P. L. 571; 21st April 1858, P. L. 386, and April 1st 1864, P. L. 206, have modified the road law of Philadelphia in many respects, especially in the manner of laying out and opening streets, they have not repealed the Act of 1836, in regard to the assessment of damages. Thus the Act of 1855 authorizes councils by ordinance to order any street that is upon the public plan of the city, to be opened upon giving three months notice to property owners; whereupon any of the owners may forthwith petition the Court of Quarter Sessions for viewers to assess the damages. The Act further provides that security shall be given by the city before the ground shall be actually taken, and contains other matters not essential to the present discussion. The Act of 1856 contains an express recognition of the Act of 1836, as being in force in Philadelphia. It says: " That whenever councils shall order any street upon the plan of said city to be opened or widened, no damages, therefor, shall be paid, unless first assessed by a jury, and approved by the Court of Quarter Sessions, in accordance with the general road laws of the Commonwealth." The Act of 1858 requires juries selected to assess damages for the opening, widening or vacating roads or streets in said city to ascertain, and report to the court first, what damages the parties claiming the same are entitled to, and second, to assess and apportion the same among and against such owners of land as shall be benefited by such opening, &c. The Act of 1864 authorizes juries to inquire as to advantages accruing to property owners by opening of streets, and provides for the assessing of such benefits, and the collection of the same by the city solicitor.

It was contended on the part of the petitioners, that in 1873, when this change of grade was made, and continuously to the present time, damages for opening streets in Philadelphia, have been, and are now, ascertained under the Acts of Assembly above referred to. This statement is true as far as it goes, yet the legislation referred to is incomplete in itself. It is plainly supplemental to the general road law. That is the superstructure upon which it all rests. No one could ascertain from the Acts last cited how many jurors were required to assess damages for the opening of a street, when or by whom they are to be appointed, or when they shall file their report. We regard it as clear that the general road law of 1836 is in force, and applies to the city of Philadelphia excepting in so far as it has been supplied and modified by subsequent legislation. I have looked it through with some care, and I am unable to find any repeal of that portion of the 7th section of the Act of 1836 which requires the appointment of a jury to assess the damages,

[In re Ridge Avenue.]

to be made within one year from the opening of the street.

It was urged that the motion to quash was made too late, the time for filing exceptions having expired. This would be true if the court had jurisdiction. But it had not. Unless the petition is presented within one year, the court has no jurisdiction.

But if we are mistaken in all this, these proceedings cannot stand, for the reason that the case does not come within the 27th section of the consolidation Act, before referred to. I have already said the constitutional provision does not apply, and for this reason I have not referred to one or two recent, unreported cases which were decided under the constitution. It is at least probable the 27th section was introduced into the Consolidation Act in view of the decision of this Court in O'Connor *v.* The City of Pittsburg, where the city had changed its own grade, by means of which, a valuable property was seriously injured, without remedy to the owner. It was considered to be, and it undoubtedly was, a great hardship, when an owner had improved his property in accordance with a grade fixed by the city, to have it injured by a subsequent change of grade, and no remedy for such injury. The 27th section of the Act of 1854 was intended to give such remedy. But as none existed before the passage of the Act, we must limit it to such cases as come within its terms.

Prior to the Act of 1854, the present city of Philadelphia was composed of several distinct municipalities. Each had its special Acts, for the plotting, grading, regulation, and construction of streets, within its limits. There was no general plan, and no community of corporate interests. Each adopted such plans and regulations as specially suited its locality, and the special character of its municipal growth. The effect of the Act of consolidation, was to connect these outlying municipalities with the city of Philadelphia, and thus create one homogeneous corporate structure, co-extensive with the county limits. Each municipality had, prior to the Act, its own street grades, and it was seen that to render these uniform, and to conform to any general plan for the enlarged city, would necessarily involve changes of grade in some localities. The 27th section, therefore, after providing for a Board of Surveyors, for the purpose, among other things, of making a general plan of the entire city, goes on to declare that nothing therein contained shall alter or interfere with any survey or regulation, made or directed by law to be made, of any portion of the county, but the same shall be completed, or if already confirmed, shall remain unalterable, unless such alteration shall be approved by councils. Then follows the provision, that if any alteration shall be made, of any portion of the city, in conformity with the provisions of

[In re Germantown Avenue.]

said section, " whereby damages may ensue to private property, compensation shall be made for such damages, to be ascertained and paid by law, as in case of damages for opening streets."

It is too plain for argument that this section refers only to a change of a grade previously established by the city of Philadelphia, or by one of the municipalities referred to, prior to consolidation. It speaks of nothing else, and gives a remedy for nothing else. However meritorious the claim of the petitioners may be, they must show an Act of Assembly to sustain it, and they have not done so. The grade of Ridge avenue, prior to the adoption of city Plan No. 163, was not established by the city or any of the municipalities referred to. In the first report of the jury they find that " there has been no evidence adduced before us of the establishment of a grade of the old Ridge avenue turnpike, within the limits of the said points last named, prior to the summer of 1873, when the improvements of Ridge avenue were made." Notwithstanding this, the court below sent the report back to the jury, with instructions to assess the damages. This, we think, was error. The first report should have been confirmed, and the petition dismissed. It does not come within the Act of 1854, and, in any event, it was filed too late.

The judgment is reversed, and the petition quashed at the costs of the petitioners.